Benjamin A. BERRY,
Petitioner-Appellant,

v.

John T. KING, Secretary of Department
of Corrections, Etc., et al.,
Respondents-Appellees.

No. 85–3043.

United States Court of Appeals,
Fifth Circuit.

July 1, 1985.

Samuel S. Dalton, Jefferson, La., for petitioner-appellant.

John M. Mamoulides, Dist. Atty., William C. Credo, III, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, La., for respondents-appellees.

Before RUBIN, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal from a denial of a petition for habeas corpus raises two issues: (1) whether Benjamin Berry was denied effective assistance of counsel in his state capital murder trial; and (2) whether this circuit should reconsider its position that excluding from the guilt phase of a capital case jurors who are absolutely opposed to the death penalty does not violate the constitutional rights of the defendant in light of the Eighth Circuit's decision in *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985), petition for cert. filed sub nom *Lockhart v. McCree*, 53 U.S.L.W. 3870 (U.S. May 29, 1985) (No. 84–1865). We affirm the denial of the petition, but leave in effect the stay of execution for fifteen days in order to permit Berry to apply for certiorari.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 1978, Benjamin Berry and David Pennington drove from Baton Rouge to Metairie with the intention of robbing the Metairie Bank and Trust Company. Berry entered the bank and drew a nine millimeter automatic pistol. There was an exchange of gunfire between Berry and Cochran, a Jefferson Parish deputy sheriff working as a guard in the bank, in which Berry fired three shots and Cochran fired one shot. Cochran's shot struck Berry in the lower left chest; two of Berry's shots struck Cochran in the shoulder and the neck, resulting in Cochran's death. Berry and Pennington fled the scene and returned to Baton Rouge, where both were arrested.

Berry was indicted for first-degree murder, and retained Frederick A. Blanche, III as counsel for his trial. The state's evidence identifying Berry as the individual who committed the attempted armed robbery and shooting was overwhelming. At trial, Blanche conceded in his opening statement that Berry intended to rob the bank in Metairie. In addition, Blanche stipulated to the following facts: (1) that Berry went to the bank intending to commit an armed robbery; (2) after entering the bank Berry fired three shots, two of which struck and killed Cochran; (3) Cochran fired a single shot which struck Berry; and (4) the bullets which were found in Cochran and Berry each came from the other's gun. The guilt phase of the trial proceeded with the state calling various witnesses to the crime, attempting to establish that Berry fired the first shot in the bank. Berry's defense in the guilt phase was that he did not possess the specific intent necessary for a first degree murder conviction under the Louisiana statute. Berry was the only witness in his behalf, and his testimony essentially corroborated the facts in the stipulation. He denied that he fired the first shot, contending that he did not intend to shoot Cochran, but did so only as a self-defense reflex.

The jury found Berry guilty, and the sentencing phase proceeded. During this phase, Blanche introduced no witnesses or evidence on Berry's behalf. Berry's mother was called to testify, but was apparently overcome by emotion and ultimately was not placed on the stand. Berry was sentenced to death.

Berry's conviction was affirmed on appeal, and the United States Supreme Court denied certiorari. Berry then filed a state habeas corpus petition, which was denied after an evidentiary hearing. The primary charge made in the state habeas petition is the same as that made in this federal petition—that Berry was denied effective assistance of counsel because Blanche was addicted to illegal drugs at the time of the trial. A number of witnesses testified in

the state evidentiary hearing, including Blanche himself, the state judge who presided over Berry's trial, David Pennington's attorney, and various associates of Blanche. The testimony of Blanche's associates was that he had, at times in the past, had problems with drugs. The state judge and others who were present at Berry's trial testified that he did a good job in a difficult case. The denial of the state habeas petition was affirmed by the Louisiana Supreme Court. *State v. Berry*, 430 So.2d 1005 (La.1983).

Berry then filed this federal habeas corpus petition under 28 U.S.C. § 2254 in the district court for the Eastern District of Louisiana. The district court dismissed all of Berry's claims save that of ineffective assistance of counsel, and granted a stay of execution pending the outcome of *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), which were then pending before the Supreme Court. Berry appealed this ruling and this court remanded after the decisions in *Strickland* and *Pulley v. Harris* were issued, 736 F.2d 1524.

In August 1984 an evidentiary hearing was held before a magistrate. At this hearing, the testimony again was largely directed to Blanche's involvement with drugs. The magistrate recommended that Berry's petition be dismissed, and his findings and recommendations were adopted by the district court.

Berry noticed eight separate grounds for appeal from the district court's dismissal; of these only his claims concerning ineffective assistance of counsel and a claim based on the Eighth Circuit's decision in *Grigsby v. Mabry* have been pressed in this appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In evaluating whether a conviction must be reversed for ineffective assistance of counsel, we utilize the two-part test set forth by the Supreme Court in *Strickland v. Washington:*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

— U.S. at —, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In evaluating the first prong of the *Strickland* test, whether counsel's professional conduct falls short of the standard, *Strickland* teaches us that:

Judicial scrutiny of counsel's performance must be highly deferential ... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at — – —, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95.

The prejudice required by the second prong of the *Strickland* test is something considerably more than the possibility that an unreasonable error by counsel might have had some effect on the trial. As the Supreme Court stated in *Strickland:* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at —, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome of the case. *Id.*

Berry's contentions of ineffective assistance essentially fall into two closely related categories. First, Berry contends that as a result of his alleged drug addiction Blanche failed to adequately investigate and prepare for the defense of his case. This lack of investigation and preparation allegedly caused Blanche to fail to locate witnesses who could have supplied exculpatory information in the guilt phase and mitigating testimony in the penalty phase. Second, Berry contends that Blanche's drug use, plus his failure to investigate, prevented him making any sort of organized presentation during the guilt and sentencing phases of the trial. Berry contends that in the guilt phase this caused Blanche to stipulate to the "functional equivalent of a plea of guilty" without Berry's consent. He further contends that during the sentencing phase Blanche was unable to make more than a "tepid" plea for his client's life.

■ We first note that the question whether Blanche in fact used drugs during Berry's trial was far from settled in either the state or the federal evidentiary hearings. In any case, under *Strickland* the fact that an attorney used drugs is not, *in and of itself,* relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant. We therefore concentrate on Berry's specific allegations of deficient performance and prejudice.

■ In *Strickland,* the Supreme Court noted that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. The majority of Berry's ineffective assistance claims are best disposed of in this fashion. Although Berry contends that Blanche's failure to investigate led him to miss medical and ballistic evidence which would have raised a reasonable doubt concerning who fired the first shot in the bank, and thus a reasonable doubt as to Berry's intent, the only evidence Berry has specifically identified is the testimony of Dr. Monroe Samuels. Dr. Samuels is a forensic pathologist who testified at the state evidentiary hearing. Having examined Dr. Samuels' testimony, we find it to be at best equivocal, and certainly not sufficient to undermine confidence in the outcome of the trial. Since Berry has not pointed to any other evidence which would have been produced by more thorough investigation, we conclude that even if his counsel failed to investigate and that failure was unreasonable, no prejudice has been demonstrated.

■ Berry's contention that Blanche stipulated to the functional equivalent of a plea of guilty without his consent has more substance. If Berry's characterization of this stipulation were accurate, this allegation would require more analysis. It is clear, however, that the stipulation did not admit every element of guilt. The stipulation did not admit specific intent; the lack of specific intent, a necessary element under La.Rev.Stat. 14:30, was the defense which Blanche presented in the guilt phase. Thus, this stipulation was a concession of facts which Blanche apparently concluded the state could easily establish and that no advantage would inure to Berry if live witnesses recounted these unfavorable facts for the jury. Berry has also failed to identify any prejudice which resulted from the stipulation. His sole contention is that Blanche failed to subject the prosecution's case to meaningful adversarial testing, and "effectively relieved the state of its burden of proving each and every essential element of first degree murder beyond a reasonable doubt and further deprived petitioner of the opportunity to reap the benefits of any trial error which otherwise [would have] developed as a result of the state being forced to present its evidence." This argument is not convincing. "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, ca-

price, 'nullification' and the like. A defendant has no entitlement to the luck of a lawless decision maker, even if a lawless decision cannot be reviewed." *Strickland*, at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. It is also true that a defendant is not entitled to the luck of an inept adversary. We therefore conclude that Berry has not identified any prejudice resulting from the stipulation.

For the reasons outlined above, we also find that Berry has demonstrated no prejudice in the sentencing phase from any failure to investigate by Blanche. The only specific mitigating evidence Berry cites which might have been uncovered by a more thorough investigation is the testimony of Dr. Samuels, which Berry again argues might have swayed the jury in his favor.

Berry's assertion that Blanche first called his mother as a witness, but then decided not to place her on the stand, thus giving the jury the impression that his own mother would not testify in his behalf, is unconvincing. It appears from the record that Mrs. Berry was overcome with emotion and thus unable to testify. Blanche then placed her on the front row of the courtroom, in full view of the jury. This was a reasonable and strategic response to this situation. Finally, we have examined Blanche's closing argument and find it to be within the range of professional competence which is required.

### III. THE EFFECT OF GRIGSBY V. MABRY

The Supreme Court decided in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct.

1770, 20 L.Ed.2d 776 (1968), that those individuals in the jury venire who indicate "that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them," 391 U.S. at 514, 88 S.Ct. at 1772, may be excluded from juries in the trial of the penalty phase in capital cases. *Witherspoon* left open the question whether the exclusion of so-called *"Witherspoon excludables"* from the *guilt* phase of the trial of a capital case might violate the rights of the defendant. 391 U.S. at 517–18, 520 n. 18, 88 S.Ct. at 1774–75, 1776 n. 18. Since *Witherspoon*, however, decisions of this circuit have established as a matter of law that exclusion of jurors authorized by *Witherspoon* from the guilt phase of the trial does not violate the sixth amendment right to have a jury selected from a representative cross section of the community or the fourteenth amendment due process right to an impartial jury.[1] The Eighth Circuit recently reached a different conclusion in *Grigsby v. Mabry* and found that the exclusion of *Witherspoon* excludables from the guilt phase of the trial violates the sixth amendment. From an examination of the jury voir dire, it appears that one juror was challenged on *Witherspoon* grounds at Berry's trial.[2] Berry therefore asks that we take judicial notice of the underlying factual findings in *Grigsby v. Mabry*, and hold that this exclusion violated his Sixth Amendment rights.

We are informed that a petition for certiorari has been filed in the *Grigsby* case. The Eighth Circuit's decision in *Grigsby*

---

1. See *Mattheson v. King*, 751 F.2d 1432, 1442 (5th Cir.1985); *Knighton v. Maggio*, 740 F.2d 1344, 1350 (5th Cir.) *cert. denied*, —— U.S. ——, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984); *Moore v. Maggio*, 740 F.2d 308, 321 (5th Cir.1984); *Sonnier v. Maggio*, 720 F.2d 401, 407–08 (5th Cir.1983) *cert. denied*, —— U.S. ——, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); *Smith v. Balkcom*, 660 F.2d 573, 575–84 (5th Cir.1981), *modified on other grounds*, 671 F.2d 858 (5th Cir.) *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); *Spinkellink v. Wainwright*, 578 F.2d 582, 583–96 (5th Cir.1978) *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

2. We reject the State's suggestion that the juror challenged for cause was within reach of a peremptory challenge, and therefore Berry may not complain of his exclusion. Contrary to the State's representation in its brief, the Louisiana Supreme Court found that the State had used its quota of peremptory challenges at Berry's trial, and found "therefore ... defendant would have cause for complaint if the state had been erroneously allowed a challenge for cause." *State v. Berry*, 391 So.2d 406 at 410.

may not be ignored. We therefore, although affirming the denial of Berry's habeas petition, leave in effect the stay of execution for fifteen days in order to permit Berry to apply for certiorari and a further stay.

AFFIRMED.