United States Court of Appeals,

Fifth Circuit.

No. 91-4649

Summary Calendar.

Charles A. BURNETT, Petitioner-Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellee.

Feb. 10, 1993.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Charles Albert Burnett (Burnett) appeals the district court's denial of his petition for a writ of habeas corpus, under 28 U.S.C. § 2254, in which Burnett raised several challenges to his two Texas convictions and sentences for aggravated robbery of the same E-Z Mart convenience store.

**Facts and Proceedings Below**

On May 12, 1988, and again on June 1, 1988, Burnett robbed an E-Z Mart convenience store in Sherman, Texas. On the first occasion, Burnett entered the store shortly after 11:00 p.m. Store clerk Patricia Neal (Neal) had just entered the establishment in order to relieve store clerk Lisa Lopez (Lopez). Neal saw Burnett enter the store. While processing paperwork, Lopez saw, from the corner of her eye, Neal turn to her to speak. Then Burnett came behind Lopez and pressed a knife against her back. Burnett told her to open the register which she did and then he took some money from it. He then told Lopez and Neal to lay down on the floor or he would kill them. Burnett then fled from the premises. Subsequently Neal was shown a police mug book but she was unable to identify Burnett. Lopez could identify Burnett by his voice since she had worked at the store for some time and he had been in the store before. Lopez could not identify him by sight because she had only seen him from the corner of her eye.

On the second occasion, only Lopez was present at the E-Z Mart when Burnett again displayed a knife, threatened her, and took money from the cash register. Lopez did get a good look at Burnett during this robbery. On October 6, 1988, Lopez identified Burnett in a photographic lineup as the perpetrator.

Burnett was subsequently charged with two counts of aggravated robbery. During trial, Neal was able to identify Burnett as the robber from the May 12 robbery. Lopez also identified Burnett from the May 12 robbery after Burnett had supplied a voice exemplar.[1] She also identified him as the robber from the June 1 robbery. Burnett chose not to testify during trial and presented an alibi defense that he was in Houston, Texas, when the robberies occurred.

On December 9, 1988, Burnett was convicted by a jury and sentenced to fifteen years for the first robbery and fifty years for the second; the sentences to be served concurrently. Later, the trial court conducted an evidentiary hearing based on Burnett's amended motion for a new trial.[2] Subsequently, his convictions were affirmed on direct appeal. *Burnett v. State,* 784 S.W.2d 510 (Tex.App.—Dallas 1990). The Texas Court of Criminal Appeals then refused Burnett's petition for discretionary review.

Burnett filed *pro se* the instant petition for writ of habeas corpus in the district court, asserting two grounds of relief: violation of his Fifth Amendment privilege against self-incrimination and ineffective assistance of counsel. A United States magistrate recommended that relief be denied; and subsequently the district court adopted the magistrate's recommendation and entered final judgment denying relief. No federal evidentiary hearing was held. The district court granted a certificate of probable cause, and Burnett has appealed to this court.

Burnett asserts on appeal the same two grounds of relief. First, he argues that his Fifth

---

[1]Burnett gave the exemplar in front of Lopez and the jury, where he was made to repeat the phrases, "open the register," "lay down on the floor," "you fucking whores, I'll be back, I'll be back," and "don't touch that bat." These phrases were ones which trial testimony showed the robber spoke during the May 12 incident.

[2]The trial court heard testimony on Burnett's complaints concerning the voice exemplar and ineffective assistance of counsel. It subsequently denied Burnett's motion for a new trial. At this hearing Burnett was represented by new counsel, and not by the counsel who had represented him at trial.

Amendment privilege against self-incrimination was violated by being forced to give a voice exemplar for identification purposes. Second, he contends that his trial counsel was ineffective for any one or more of four reasons. We affirm the district court's denial of relief.

**Discussion**

I. Fifth Amendment Privilege Against Self-Incrimination

Burnett asserts that his compelled voice exemplar before the jury was a violation of his Fifth Amendment rights because he was required to repeat the exact words of the armed robber, even though he chose not to testify during trial.[3] The voice exemplar was allegedly for purposes of identification, but Burnett contends that the purpose of the words, especially the obscenities, was to inflame the jury. He argues that identification was not needed because the witness Lopez had already positively identified him from a photo lineup. Therefore, he claims, having to repeat the threatening and vulgar language of the robber was prejudicial and infringed on Burnett's Fifth Amendment rights.

The Fifth Amendment privilege against self-incrimination protects a defendant from being compelled to provide information against himself, or otherwise provide the state with evidence, *of a testimonial or communicative nature. Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). It does not protect him from being compelled to produce real or physical evidence. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). A voice exemplar does not violate one's Fifth Amendment privilege against self-incrimination because the exemplar is merely a source of physical evidence. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). A voice exemplar may even consist of the exact words spoken at the crime. *Wade, supra.* The Supreme Court has not addressed the possible prejudicial effect of live courtroom voice identification using threatening and vulgar language in the presence of the jury. However, the circuits that have confronted the issue of a voice exemplar in the jury's presence have allowed it.

---

[3]We note that the trial court specifically admonished the jury that "the law allows the Defendant to testify in his own behalf, but failure on his part to do so is not a circumstance against him. I instruct you in this case not to consider, discuss or even refer to such failure on the part of the Defendant to testify during your consideration of this case."

In *United States v. Brown,* 644 F.2d 101 (2nd Cir.1981), the defendant was required to repeat in front of the jury for witness identification, "Give me your money or I am going to blow you up." *Id.* at 103. The court held that since the robber had disguised his facial features by wearing a ski mask, voice identification was appropriate. Moreover, his counsel was advised in advance in judge's chambers that this procedure would be employed so that he had the opportunity to mitigate any suggestiveness by requiring another person to speak or changing the text of what was spoken. The Court concluded that "[i]n view of these circumstances, we find no constitutional infirmity in the procedure employed." *Id.*

In *United States v. Williams,* 704 F.2d 315 (6th Cir.1983), the defendant was required to read, over his counsel's objection, a neutral passage from *Time Magazine* for the purpose of allowing the jury to hear his "distinctive ... gravelly-type voice." *Id.* at 317. The defendant argued that the exemplar was "an involuntary disclosure of vocal and physical demeanor patterns which could result in unfavorable jury reactions." *Id.* at 318. The court rejected his argument that such a demonstration was *per se* unconstitutional and observed that:

> "Demeanor typically impacts as a crucial jury inquiry only when a witness offers testimonial evidence, thereby injecting his credibility into issue. In contrast, a defendant compelled to give a live voice exemplar is not a witness for purposes of evolving testimonial evidence. A compelled reading of a neutral passage fails to join the defendant's credibility in issue and the defendant's demeanor axiomatically fails to become relevant or material to the ultimate issue of guilt or innocence." *Id.* at 320.

The court concluded that "[t]he proscriptive parameters of compulsion to submit a live voice exemplar are products of evidentiary rules and judicial discretion rather than of constitutional dimension." *Id.*

In *United States v. Domina,* 784 F.2d 1361 (9th Cir.1986), the defendant, for identification purposes, was forced to repeat the words: "Ladies, this is a holdup" and "Put all the money in a bag." These statements were made in the presence of the jury and over counsel's objection. Domina argued that such an exemplar was error because it violated his Fifth Amendment rights and to speak the exact words of the robber was unduly prejudicial. The court rejected both arguments. It first noted that the Fifth Amendment privilege against self-incrimination was not implicated where the defendant was not asked to utter words of a testimonial nature. As held in *Wade,* 388 U.S. 218, 87 S.Ct. 1926:

"[C]ompelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a "testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt." *Id.* at 222-23, 87 S.Ct. at 1930.

Since Domina was asked to repeat the robber's words for identification purposes and not to "speak his guilt," no Fifth Amendment violation occurred. *Domina,* 784 F.2d at 1371.

The *Domina* court similarly rejected the argument that "requiring him to repeat, in the presence of the jury, the exact language the robber had purportedly uttered, was unduly prejudicial, creating an aura of guilt because of the words uttered." *Id.* The court noted that "it would have been a far better procedure to have had Domina repeat neutral words.... However, we do not find that the procedure utilized here was reversible error." *Id.* at 1371-72. The court pointed out that the identification was done in open court in the presence of the jury with the availability of cross-examination to reveal the weaknesses of such a procedure. *Id.* at 1372. Also, there existed other evidence linking Domina to the crime. *Id.*

In *United States v. Leone,* 823 F.2d 246 (8th Cir.1987), the defendant was compelled to repeat, in the presence of the jury, phrases that had been played in court as part of a taped conversation: "About an hour," "I took the phone off the hook, one of them," and "I did." *Id.* at 250. Leone argued that "the words he was required to speak were testimonial in character, rather than identificative, because Officer Emary had already testified that the voice he heard on the phone and in person were the same." *Id.* The court rejected this argument because the spoken words were "totally void of any incriminatory content" which would amount to an admission of guilt. *Id.* Leone also argued that his Fifth Amendment right to due process was violated because "the words he was made to speak were, under the circumstances, so unnecessarily suggestive as to prejudice the jury against him." *Id.* The *Leone* court agreed with the *Domina* court, that since defendant's counsel could use cross-examination to expose weaknesses in the procedure and other evidence linked Leone to the crime, there was no error. *Id.* at 251.

Turning to the facts of this case, Burnett asserts that the voice exemplar violated his Fifth Amendment privilege against self-incrimination because it was not given for identification purposes since Lopez had already identified him in a photo lineup. Burnett's argument fails to recognize that

this identification was made after the June 1 robbery during which Lopez admitted that she got a good look at the perpetrator. However, she testified that she did not get a good look at the robber during the May 12 robbery and she could not identify him by sight at that time.[4]

The prosecution's case was based on the identification of Burnett by Neal and Lopez. Burnett's alibi defense was necessarily based on discrediting the testimony of these two witnesses. Although Neal positively identified Burnett as the robber for the May 12 robbery, Burnett's counsel cast doubt on her identification by eliciting from her testimony that she had not been able to identify him at the time of the robbery. Since Lopez could not positively identify Burnett by sight but could identify him by voice, the voice exemplar was needed evidence in the prosecution's case.

In the case *sub judice,* Burnett's Fifth Amendment privilege against self-incrimination was not violated because he was not compelled to utter words to "speak his guilt" but rather to utter words as to an identifying characteristic. *Wade, supra.* The fact that he did so in front of a jury does not

---

[4]Lopez's testimony clearly indicates that she could not visually identify Burnett for the May 12 robbery. The relevant portion of her direct examination occurred as follows:

> "Q. Okay. Now, did you get a good look at the Defendant as he came into the store?
>
> A. No.
>
> Q. Where did the Defendant go after he entered the store?
>
> A. He came around at the end of the counter and started toward me and Ms. Neal.
>
> Q. Were you facing toward him or away from him?
>
> A. Away.
>
> Q. Now, did you—what is the next thing that you remember?
>
> A. I was writing on my paperwork, and I saw her out of the corner of my eye turn around, and she started to say Lee—and then he was right behind me....
>
> Q. And after she got half of your name out and was stopped, what is the next thing that you remember?
>
> A. He was right behind me pressing up against my back.
>
> Q. Did you feel anything against your arm?
>
> A. A knife."

alter this assessment.[5]  Having reviewed the cases in the other circuits, it is clear that a compelled voice exemplar made in front of a jury is not a violation of the Fifth Amendment privilege from self-incrimination.

As to Burnett's Fifth Amendment right to due process claim that the language he was compelled to speak before the jury was prejudicial and inflammatory, we hold that such a compelled utterance did not deprive Burnett of due process.  The *Domina* and *Leone* courts considered an essentially analogous argument and rejected it.  Those courts noted that the defendants were not denied a fair trial by such a procedure because their counsel had an opportunity to cross-examine the witnesses and in any event there existed sufficient evidence outside of the voice identification to support the convictions.  Moreover, *Domina* and *Leone* were direct criminal appeals, while this is a proceeding under section 2254 where the party challenging his conviction must demonstrate a constitutional deprivation, a requirement generally not necessary to procure reversal on direct appeal. *See Carter v. Lynaugh,* 826 F.2d 408, 409 (5th Cir.1987).

As in the above cases, there was ample evidence linking Burnett to the crimes.  Furthermore, Burnett's attorney was present during the proceedings and the identifying witness was available for cross-examination.  In fact, during the trial, Burnett's counsel attacked Lopez's identification of Burnett as the robber.[6]  Also, during voir dire, the prosecution, in the defense attorney's presence,

---

[5]Certainly, merely speaking the words uttered by the robber did not mean that Burnett was the perpetrator.  *Cf. Doe v. United States,* 487 U.S. 201, 217 n. 15, 108 S.Ct. 2341, 2351 n. 15, 101 L.Ed.2d 184 (1988).

[6]Burnett's counsel called as a witness at trial a Mr. Clifton Earl Dutton who testified that after the May 12 robbery Lopez told him that "she didn't know what the guy looked like."

Burnett's counsel also brought out the following in his cross-examination of Lopez:

"Q. As I understand it, on the May 12th robbery you did not get that good a look at the robber?

A. That's correct.

Q. And after the May 12th robbery you were shown a photographic lineup, and you were not able to pick out the person that robbed you?

A. That's correct."

told the pool of prospective jurors that there would be voice identification used as evidence for the May 12 robbery.[7] Given these circumstances, as pointed out in *Brown, supra,* Burnett's counsel was given ample notice of the intended use of the voice exemplar.

The words Burnett was compelled to speak, specifically the vulgarities, cannot be viewed as so prejudicial or inflammatory as to rise to the level of constitutional error considering the probative value of the voice exemplar. As noted in *Williams, supra,* this type of consideration is a product of "evidentiary rules and judicial discretion rather than of constitutional dimension." *Id.* at 320. Also, Lopez had already stated verbatim, in the presence of the jury, the words the robber used. Burnett was not uttering for the first time the complained of language, so his repetition of it was not *per se* prejudicial or inflammatory. Given Lopez's prior utterance of the language, we "are not convinced that given the mores of today's society the presence of [offensive] language would prejudice the jury against the defendant." *United States v. Bright,* 630 F.2d 804, 814 (5th Cir.1980). Accordingly, Burnett has not demonstrated entitlement to relief on this claim.[8]

There was no violation of Burnett's Fifth Amendment right against compelled self-incrimination and his trial was not rendered fundamentally unfair by the compelled voice exemplar.

II. Ineffective Assistance of Counsel

To prevail upon a claim that his counsel's performance was so defective as to require vacation of his conviction, Burnett must satisfy a two-prong test. First, he must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment: second, Burnett must show that the deficient performance actually prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In the view of the

---

[7]One prospective juror was even excused because of his bias against voice identification.

[8]Moreover, even an erroneous admission of evidence does not entitle a convicted person to federal habeas relief under section 2254 unless the admission of the evidence resulted in a denial of a fundamentally fair trial under the due process clause. *See, Porter v. Estelle,* 709 F.2d 944, 957 (5th Cir.1983). Such an erroneous admission of prejudicial evidence will not justify habeas relief unless it is "material in the sense of a crucial, critical highly significant factor." *Id.* Compelling Burnett to utter the expletives certainly did not render the trial so fundamentally unfair as to constitute a denial of due process.

Supreme Court, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Failure to make both showings is fatal to a defendant's claim of ineffective assistance of counsel. *Id.* A defendant in a habeas corpus proceeding has the burden to demonstrate his counsel's ineffectiveness and resultant prejudice. *Martin v. Maggio,* 711 F.2d 1273 (5th Cir.1983).

Judicial scrutiny of counsel's performance is highly deferential, and the Supreme Court has admonished against judging a counsel's effectiveness by hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Our st andard of review encompasses a "strong presumption" that counsel's performance was adequate. To overcome this presumption, Burnett "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Finally, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2066. Rather, the test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. This Court has observed that a verdict strongly supported by the record is less likely to have been affected by counsel's errors than one with only weak support. *Ricalday v. Procunier,* 736 F.2d 203, 208-09 (5th Cir.1984).

Burnett complains that his trial counsel: (1) failed to object to Burnett being required to give a voice exemplar before the jury; (2) failed to explain the right to severance of the trial of the two robberies; (3) failed to object to the introduction of any evidence or to the District Attorney's leading questions; and (4) was impaired due to alcohol abuse.

*A. Failure to object to voice exemplar*

Burnett argues that his counsel's failure to object to the compelled voice exemplar constituted ineffective assistance of counsel because the exemplar violated his Fifth Amendment privilege from self-incrimination and right to remain silent. As discussed *supra,* the voice exemplar did not violate Burnett's constitutional rights. Hence, the only remaining question is whether his counsel's failure to make any objection falls within the presumptively wide range of reasonable professional assistance;

and if it did not, whether the counsel's error prejudiced Burnett's defense.

Burnett's trial counsel, testifying at the evidentiary hearing on the amended motion for new trial in the state trial court, stated that he could not think of any objection at trial; and he thought the exemplar was admissible as demonstrative or scientific evidence. The evidence was, indeed, admissible. Given the constitutionality of the voice exemplar and other evidence supporting Burnett's conviction, we cannot conclude that there is any likelihood that Burnett's counsel's failure to object would have caused a different result at trial.

*B. Failure to explain right to severance*

Burnett contends that his counsel's representation was also deficient because he failed to advise Burnett that he was entitled to a separate trial on each of the two robbery charges. The record of the new trial evidentiary hearing before the state trial court reflects that Burnett's trial attorney could not remember whether he had specifically discussed the severability of the trials with Burnett. Burnett failed to offer his own testimony or any other evidence that he was not advised of this right.[9] As the Texas Court of Appeals determined, "the record provides an insufficient basis for this specific claim by appellant." *Burnett,* 784 S.W.2d at 514. We agree.

Not only has Burnett failed to satisfy the first prong of the *Strickland* test, but he has also failed to show how the consolidated trial prejudiced his defense. Even if he had been allowed a severance, the evidence as to both robberies could have been admitted at each of the separate trials because the robberies were related. *Manning v. Blackburn,* 786 F.2d 710 (5th Cir.1986) (holding that "[w]hen all the evidence at one trial could have been admitted at two separate trials, there could be no prejudice in having just one trial"). In this case the victim was the same, the offense was the

---

[9]Since Burnett was given an opportunity by the state trial court to present evidence of this allegation, it is too late now for a court considering his habeas petition to receive new evidence on this point. Where the petitioner has failed to develop evidence in state court, he is only entitled to a federal evidentiary hearing "if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" or "if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Keeney v. Tamayo-Reyes,* --- U.S. ----, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992). No such showing has been made in this case.

same, and the location was the same.[10] *See* Tex.R.Crim.Evid. 404(b); *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.1976) (on habeas review, allowing the admission of evidence of an extraneous offense if there is a strong showing the defendant committed the offense, and the extraneous offense is rationally connected with the offense charged); *Enriquez v. Procunier,* 752 F.2d 111, 114 (5th Cir.1984) (applying the *Hill* test). Since the evidence from one trial would be admissible in the other, Burnett has also failed to meet the prejudice prong of the *Strickland* test.[11]

## C. Failure to object to evidence or leading questions

Burnett also claims that his counsel was ineffective because he did not object to any evidence or to leading questions. The trial transcript reflects that Burnett's counsel did not make any objections and that the prosecution from time to time did ask leading questions. However, failure to object to leading questions and the like is generally a matter of trial strategy as to which we will not second guess counsel. Moreover, Burnett does not point out any specific instances and explain how those instances likely would have resulted in a different trial outcome. It appears that the leading questions could have been simply rephrased. In any event, assuming there were instances where objections should have been made, Burnett has failed to show how they likely prejudiced his defense. *See, Rushing v. Butler,* 868 F.2d 800, 806 (5th Cir.1989) (This Court dismissing defendant's complaint about failure to object to leading questions because "even if we were to surmise that defense counsel's performance was, in fact, deficient ... Rushing's claims of ineffective assistance of counsel must fail under the prejudice prong of the *Strickland* analysis."). Burnett is not entitled to relief in this respect.

## D. Impairment due to alcohol abuse

Finally, Burnett asserts that he did not have effective counsel because of his attorney's alcohol

---

[10]Furthermore, part of the voice exemplar Burnett objects to are the words "I'll be back." These words, which Lopez testified were spoken by the robber during the May 12 robbery, clearly show a link between the two crimes. Also, Lopez testified that during the June 1 robbery, the robber stated, "You remember me, don't you?" This statement also shows a link between the two offenses.

[11]We note in passing that under Texas law Burnett's sentences were concurrent but if the cases were tried separately the likelihood of consecutive rather than concurrent sentences on the two offenses was enhanced. Tex.Code Crim.Proc.Ann. art. 42.08(a) (West 1992).

abuse. Burnett states that he could smell alcohol on his attorney's breath; and after trial, his counsel entered a facility for treatment of alcohol abuse. However, Burnett points to no specific instances where counsel's performance *during trial* was deficient because of alcohol abuse, nor are any such apparent from the record of trial or the hearing on the amended motion for new trial. As stated in *Berry v. King,* 765 F.2d 451 (5th Cir.1985):

> "[U]nder *Strickland* the fact that an attorney used drugs is not, *in and of itself,* relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." *Id.* at 454 (original italics).

Burnett's claim is nothing more than a bare assertion that since his counsel abused alcohol, his counsel was ineffective. This claim must fail under *Berry.*

Furthermore, Burnett has failed to even show that counsel was impaired during trial due to alcohol abuse. In fact, the evidence adduced during the state trial court's evidentiary hearing on the amended motion for new trial contradicts Burnett's assertion. At the hearing, the investigator for the defense indicated that he did not observe defense counsel intoxicated during trial. Burnett's defense counsel also testified that he was not intoxicated during the trial.

Burnett has failed to show that his counsel was impaired at trial or that any impairment caused specific errors during trial, and he has also failed to show harm because of counsel's use of alcohol. We must, therefore, reject his contention that his attorney's alcohol use resulted in ineffective assistance of counsel.

## Conclusion

None of Burnett's claims on appeal demonstrate error in the district court's denial of his habeas petition. Therefore, the district court's judgment is

AFFIRMED.

* * * * * *


* * * * * *