The appellant, Charlecy Dean Spangler, was convicted of promoting prostitution in the second degree, a violation of § 13A12-112, Code of Alabama 1975. She was sentenced to three years' imprisonment and was ordered to pay a fine of $2,500, a crime victims assessment of $500, and court costs. The trial court suspended the appellant's sentence and ordered her to spend two years on probation.
 I.
The appellant argues that the trial court erred to reversal by denying her motion for a mistrial and motion for judgment of acquittal.
 A.
The appellant's first motion for a mistrial was made after the prosecutor, in the jury's presence, requested that the appellant speak aloud so that a witness for the State could identify her voice. The appellant argues that the prosecutor's request amounted to a direct comment on the appellant's failure to testify, and that the trial court, which did not give a curative instruction after the comment *Page 1127 
was made, erred to reversal by denying her motion for a mistrial.
The trial court denied the State's request, and the appellant was not required to speak before the jury. Thus, the appellant's motion for a mistrial is not predicated upon her actually having been required to speak. Rather, the appellant appears to contend that by singling her out in this manner, the prosecutor called to the jury's attention her subsequent failure to testify.
A comment on failure to testify may violate Art. I, § 6, Alabama Constitution of 1901, or the Fifth or the Fourteenth Amendment of the United States Constitution. Ex parte Brooks,695 So.2d 184 (Ala. 1997). A defendant's right to be free from self-incrimination as set out in the Fifth Amendment are also stated in Art. 1, § 6, Alabama Constitution of 1901, which states:
 "That in all criminal prosecutions, the accused . . . shall not be compelled to give testimony against himself. . . ."
In order to be protected under the Fifth Amendment, a compelled communication must be testimonial. Schmerber v.California, 384 U.S. 757, 765, 86 S.Ct. 1826, 1832-33,16 L.Ed.2d 908 (1966). In Doe v. United States, 487 U.S. 201,108 S.Ct. 2341, 101 L.Ed.2d 184 (1988), the United States Supreme Court held that in order to be considered testimonial, a "communication must itself, explicitly or implicitly, relate a factual assertion or disclose information" that expresses "the contents of an individual's mind." Id. at 210 n. 9,108 S.Ct. at 2347 n. 9. See Twenty-fifth Annual Review of CriminalProcedure, 84 Geo. L.J. 1115, 1212 (1996).
 "The distinction between a testimonial and nontestimonial communication gives the government a great deal of freedom in conducting an investigation. The government may, for example, compel a person to reenact crime; shave his beard or mustache; try on clothing; dye her hair; demonstrate speech or other physical characteristics;[1930] furnish handwriting samples; hair samples, or fingerprints, have her teeth and gums examined; or take a blood-alcohol, breathalyzer, or urine test.
 [1930] "See Pennsylvania v. Muniz, 496 U.S. 582, 592 [110 S.Ct. 2638, 2645, 110 L.Ed.2d 528] (1990) (compelling drunk driving defendant to demonstrate slurred speech and lack of coordination on videotape not Fifth Amendment violation because not testimonial); U.S. v. Wade, 388 U.S. 218, 222-23
[87 S.Ct. 1926, 1929-30, 18 L.Ed.2d 1149] (1967) (compelling defendant to speak within hearing distance of witness and to exhibit physical characteristics not Fifth Amendment violation because not testimonial); U.S. v. Dionisio, 410 U.S. 1, 7
[93 S.Ct. 764, 768, 35 L.Ed.2d 67] (1973) (compelling production of voice exemplars not Fifth Amendment violation because not testimonial); U.S. v. Silvestri, 790 F.2d 186, 189 (1st Cir.) (compelling defendant to stand up and identify himself after witness described defendant but could not remember his name not Fifth Amendment violation because not testimonial); cert. denied, 479 U.S. 857 [107 S.Ct. 197, 93 L.Ed.2d 129] (1986); In re Doe, 860 F.2d 40, 46 (2d Cir. 1988) (compelling compliance with subpoena duces tecum seeking voice exemplars not Fifth Amendment violation because not testimonial); Burnett v.Collins, 982 F.2d 922, 927 (5th Cir. 1993) (compelling defendant to say phrases heard by witness during commission of crime not Fifth Amendment violation because not testimonial); U.S. v.Leone, 823 F.2d 246-249-51 (8th Cir. 1987) (compelling defendant to say several phrases so jury could compare voice with tape recording not Fifth Amendment violation because not testimonial); U.S. v. Delaplane, 778 F.2d 570, 575 (10th Cir. 1985) (compelling defendant to read from magazine and from transcript of wiretaps not Fifth Amendment violation because not testimonial); cert. denied, 479 U.S. 827 [107 S.Ct. 104,93 L.Ed.2d 54] (1986); cf. Tasco v. Butler, 835 F.2d 1120, 1124
(5th Cir. 1988) (no Fifth Amendment violation at sentencing hearing when court took judicial notice of defendant's identifying tattoos and scars)."
Id. at 1212-13.
In Burnett v. Collins, 982 F.2d 922 (5th Cir. 1993), the appellant was charged with two counts of armed robbery committed against the same business on separate occasions. At trial, the appellant was required, in the jury's presence, to repeat words that were vulgar and threatening, and he was subsequently convicted of both counts of armed robbery. On appeal, he asserted that his Fifth Amendment privilege against self-incrimination as well as his right to due process of law had been violated because he was required to speak exactly the same words spoken by the armed robber, even though he elected not to testify during trial. In affirming the appellant's convictions, the Burnett Court held, in pertinent part: *Page 1128 
 "The Fifth Amendment privilege against self-incrimination protects a defendant from being compelled to provide information against himself, or otherwise provide the state with evidence of a testimonial or communicative nature. Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). It does not protect him from being compelled to produce real or physical evidence. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). A voice exemplar does not violate one's Fifth Amendment privilege against self-incrimination because the exemplar is merely a source of physical evidence. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). A voice exemplar may even consist of the exact words spoken at the crime. Wade, supra."
Id. at 925 (emphasis in original). See also Lusk v. State,367 So.2d 1088 (Fla.Dist.Ct.App. 1979) (The defendant's "fifth amendment rights were simply not involved at all, because the privilege of 'silence' does not extend to nor include the furnishing of physical, nontestimonial evidence such as the revelation of the sound of one's voice.") Id., citing UnitedStates v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67
(1973); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926,18 L.Ed.2d 1149 (1967); Parkin v. State, 238 So.2d 817 (Fla. 1970),cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322
(1971); Joseph v. State, 316 So.2d 585 (Fla. Dist. Ct. App. 1975); Boyer v. State, 182 So.2d 19 (Fla. 4th DCA 1966),cert. denied, 388 U.S. 913, 87 S.Ct. 2118, 18 L.Ed.2d 1353
(1967); Higgins v. Wainwright, 424 F.2d 177 (5th Cir. 1970),cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142
(1970); Springer v. State, 175 Ind. App. 400, 372 N.E.2d 466,472 (1978); Doye v. State, 16 Md. App. 511, 299 A.2d 117
(1973).
 "Voice identification testimony is the product of an observable physical characteristic made by an independent witness. It is the very type of objective factual evidence, independent of information communicated by the accused, that the privilege encourages police to seek. Moreover, independent identification testimony, unlike testimonial evidence derived from the accused, raises no question of reliance on the veracity of the accused. Any attempt by a suspect to disguise his voice is apt to be detected readily by those persons present who can compare the sample with his normal voice. Furthermore, there is no risk that one could be coerced into falsely accusing himself. It is difficult to imagine how a suspect could be induced to impersonate an unknown voice to incriminate himself.
 "A suspect asked to speak for voice identification is not subjected to the same psychological pressure said to be generated by a demand for testimony,. It is no more unfair to ask a suspect to speak for voice identification than to ask him to appear in a lineup for visual identification. The psychological pressures are reduced to the same degree, through a limitation of alternatives. Deceit is improbable; the simple choice for a guilty person is between conduct likely to expose incriminating evidence and inferences as to guilt likely to flow from a successful refusal to participate."
People v. Ellis, 65 Cal.2d 529, 55 Cal.Rptr. 385, 387,421 P.2d 393, 397 (1966).
As to any violation of the Fourteenth Amendment caused by the prosecutor's comment:
 "The prosecutor's duty in a criminal prosecution is to seek justice. Although the prosecutor should prosecute with earnestness and vigor, she may not use 'improper methods calculated to produce a wrongful conviction.' Generally, the use of such methods is a ground for mistrial or reversal of a conviction if it results in an unfair trial in violation of the Due Process Clause."
84 Geo. L.J. at 1194.
 "Even though evidence obtained from a voice identification is not within the privilege against self-incrimination, the question remains whether evidence and comment on a refusal to take such a test is admissible. It is clear that 'it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation.' *Page 1129 
(Miranda v. State of Arizona (1966), 384 U.S. 436, 468, fn. 37, 86 S.Ct. 1602, 1625, fn. 37, 16 L.Ed.2d 694.) This doctrine is a logical extension (People v. Cockrell (1965) 63 Cal.2d 659, 47 Cal.Rptr. 788, 408 P.2d 116) of the rule of Griffin v. State of California (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, prohibiting comment on the failure of an accused to testify at trial. comment on refusal to testify was held to be 'a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.' (Griffin v. State of California, supra, 380 U.S. at p. 614, 85 S.Ct. at p. 1232.) Such a rule is not applicable when, as in this case, the defendant has no constitutional right to refuse to speak solely for purposes of voice identification."
People v. Ellis, supra, 55 Cal.Rptr. at 387, 421 P.2d at 397
In a case in which the defendant was forced to submit to a voice exemplar, and on appeal argued that doing so violated his Fourteenth Amendment due process rights, the Court held that as long as the defendant's rights to be heard and to counsel were protected, there was no "denial of due process of law, but rather a proper implementation of the role of the court." State v. Olderman, 44 Ohio App.2d 130, 137,336 N.E.2d 442, 447 (1975).
Moreover, a prosecutor's comment during his closing argument concerning the testimony of certain witnesses who had identified defendants' voices on tapes, referred to the fact that the jury did not have knowledge of the voices. The Court determined that this was not a comment on failure to testify, despite the fact that the defendants did not take the stand and testify in that case. United States v. Harbin,601 F.2d 773, 776, 777 (5th Cir. 1979), cert. denied,444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979). The Court found that the comment was not necessarily directed at the defendants' silence, although the prosecutor pointed out the fact that the jury had never personally heard the defendants' voices from the stand.[1]
Similarly, in United States v. Procopio, 88 F.3d 21 (1st Cir. 1996), cert. denied, Lattanzio v. U.S., ___ U.S. ___,117 S.Ct. 620, 136 L.Ed.2d 543, (1996); cert. denied, Kiley v.U.S., ___ U.S. ___, 117 S.Ct. 1008, 136 L.Ed.2d 886 (1997), the defendants argued that the prosecutor had impermissibly commented on their failure to testify. He responded that the government never played tape-recordings for the guards to determine whether they recognized the defendants' voices, despite defense counsel's arguments that the guards could have identified the voices. The prosecutor so argued because allegedly no one could have possibly believed that the defendants would have come to the courtroom and "fessed-up." The Court held that the comment was not a comment on the defendants' failure to testify. However, the Court stated that the comment was "unartful and could be taken — especially out of context — as an improper comment. But it was certainly not an intentional comment on the failure to testify. And in context, it was at most a glancing brush rather than a blow against the privilege." Id. at 30. The Court further stated that, in light of the judge's closing instructions and standard warning concerning a defendant's right not to testify, any error was "squarely corrected not long afterwards by the judge." Id. See also Chapman v. California, 386 U.S. 18,87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Moreover, in the trial court's oral charge to the jury in this case, the trial court gave complete and forceful instructions concerning the right of the accused not to testify. Cf. Burnett v. Collins, supra at 925 n. 3. Also cf.Bailey v. State, [CR-96-0269, Aug. 22, 1997] ___ So.2d ___ (Ala.Cr.App. 1997) (wherein the curative instructions were required to immediately follow the comment, as it was a direct reference to failure to testify). Accordingly, the trial court properly denied the appellant's first motion for a mistrial. *Page 1130 
 B.
The appellant's second motion for a mistrial was made during the State's closing argument, when the prosecutor allegedly made a second comment on the appellant's failure to testify. The alleged comment is not included in the record of this case, and it is well settled that error cannot be predicated on a silent record.
 " 'This court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record.' Smelcher v. State, 520 So.2d 229 (Ala.Cr.App. 1987); Abbott v. State, 494 So.2d 789 (Ala.Cr.App. 1986). 'Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.' Jolly v. State, 405 So.2d 76
(Ala.Cr.App. 1981); Watson v. State, 398 So.2d 320
(Ala.Cr.App. 1980), writ denied, 398 So.2d 332
(Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981)."
Owens v. State, 597 So.2d 734, 736 (Ala.Cr.App. 1992).
 II.
The appellant next argues that the trial court erred by admitting into evidence the tape-recording of a conversation between Tom Harbour, an employee of Escorts Only who had been fitted with a transmitter, and the appellant shortly before the search warrant was executed on the appellant's home. She contends that the audiotape was not properly authenticated and that its reliability was not adequately established before the tape was played to the jury. She also argues that her right to confront the witnesses against her was violated.
The appellant objected at trial to the admissibility of this audiotape on the ground that it contained the voice of Tom Harbour, who could not be found and subpoenaed to testify. She argued that playing this tape before the jury violated her Sixth Amendment right to confront witnesses against her. At no time did the appellant object to the admissibility of this tape on the grounds she now raises in this appeal. Because this issue was not properly raised before the trial court, it is not preserved for appellate review. Kennard v. State, 531 So.2d 938, 940 (Ala.Cr.App. 1988);Bolding v. State, 428 So.2d 187,191 (Ala.Cr.App. 1983).
As to the appellant's argument that her right to confront a witness was violated, the record indicates that the witness whose voice appears on the tape, Tom Harbour, was sought by the appellant. He collected the money from the prostitutes and eventually delivered it to "Cyndi," who was identified as the appellant. On the occasion of the taped conversation, Harbour was wired before he met with the appellant at her home. He turned over to the appellant $670 collected from the prostitutes; the serial numbers appearing on those bills had been recorded by the police. Thereafter, pursuant to a valid search of the residence, these bills and other incriminating evidence were collected. The conversation was monitored by officers who testified at trial that the tape-recording accurately depicted the conversation that they had heard on that occasion.
In Atkins v. Virginia, 13 Va. App. 365, 412 S.E.2d 194
(1991), a police informant was wired during the purchase of stolen handguns. The court held that the jury could properly hear the taped conversation, despite the defendant's claims that it violated his Sixth Amendment right to be confronted by the wired police informant, who did not testify. The Court based this decision on the fact that the officers who had heard the transmission could have testified to the admissions that the defendant had made and that had been transmitted by the body wire. In so holding, the Court stated:
 "A similar argument was made to and rejected by the Supreme Court of the United States in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). In that case, the wired witness did not testify and his absence was not explained. The Court permitted two officers who heard the transmission by way of the body wire to testify to statements made by the defendant. Thus, even though [the defendant] did not testify, [the officers who monitored the conversation] could have testified to the admissions made by the appellant and transmitted by the body wire." *Page 1131 
Atkins v. Virginia, 13 Va. App. at 370, 412 S.E.2d at 197.
Similarly, in the present case, as the monitoring officers testified at trial, there was no violation of the appellant's right to confrontation.
 III.
The appellant argues that the State failed to prove that she directed her employees to have sexual relations with clients or that she directed the day-to-day operation of the "escorts" themselves. She further argues that the evidence establishes that she merely hired various women to work as escorts, and that she even had them sign contracts to the effect that they would not do anything "illegal" while working for Escorts Only. The appellant therefore argues that the State failed to establish a prima facie case of promoting prostitution in the second degree, pursuant to § 13A-12-112,Code of Alabama 1975, and that the trial court erred to reversal by denying her motions for a judgment of acquittal and for a new trial.
The record reveals that, at the close of the State's evidence, the appellant made a motion for judgment of acquittal, in which she argued that the State had failed to prove that she had directed her employees to have sexual relations with their clients, and that it also failed to prove that she directed the day-to-day operation of two or more "escorts" themselves. These are not elements of the offense of promoting prostitution in the second degree, under § 13A-12-112, Code of Alabama 1975; therefore, the State was not required to prove them. Thus, the State properly argues that the issue whether it failed to prove a prima facie case of promoting prostitution in the second degree was waived in the appellant's motion for a judgment of acquittal, which contained very specific grounds. See, Sankey v. State, 568 So.2d 366
(Ala.Cr.App. 1990). However, the issue of the sufficiency of the evidence was adequately preserved for this Court's review by the appellant's motion for a new trial, which the appellant filed after her conviction. (CR. 62.) See, Zumbado v.State, 615 So.2d 1223, 1241 (Ala.Cr.App. 1993); Beard v. State,627 So.2d 1122, 1123 (Ala.Cr.App. 1993).
Section 13A-12-112, Code of Alabama 1975, provides, in pertinent part, as follows:
 "§ 13A-12-112. Promoting prostitution; second degree.
 "(a) A person commits the crime of promoting prostitution in the second degree if he knowingly:
 "(1) Advances or profits from prostitution by managing, supervising, controlling or owning, either alone or in association with others, a house of prostitution or a prostitution business or enterprise involving prostitution activity by two or more prostitutes other than the defendant."
"To prove a prima facie case in a criminal prosecution, the State must 'fulfill its duty of proving the elements of the offense so that the jury may be allowed to consider its case.' Eldridge v. State, 415 So.2d 1190, 1194
(Ala.Cr.App. 1982)." Gamble v. State 699 So.2d 978, 979
(Ala.Cr.App. 1997). In Boyd v. State, 699 So.2d 967
(Ala.Cr.App. 1997), this Court held:
 " 'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust. Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985).' "
699 So.2d at 969.
The evidence presented by the State tends to establish the following facts:
After noticing a Yellow Pages advertisement for an escort service called "Escorts Only," Yvonne Hancock called Escorts Only and eventually met with Louis Botta, another Escorts Only employee. Botta hired Hancock *Page 1132 
to work for Escorts Only, set the price that she would charge her "dates," and explained to her how the operation worked. He stated that "Cyndi" would beep her on a pager and would give Hancock pertinent client information by telephone. Hancock would then set up a meeting with the client in order to have sex with him for money. Thereafter, Hancock would call Louis Botta and then meet him to give him the business's share of the money received from the client. Botta would then give the money to another Escorts Only collection man, Tom Harbour, who would bring the money to "Cyndi," the proprietor of Escorts Only. On several occasions, Hancock interviewed other prostitutes whom she or "Cyndi" recruited to work for Escorts Only.
This pattern would repeat itself about three to four times a night for as many as six nights of a week. The method of operations described above was the same as that described in the testimonies of Louis Botta, Escorts Only's collection agent, and that of a prostitute who had also been employed by Escorts Only.
Sergeant Michael Ashworth, an officer with the vice and narcotics unit of the Birmingham Police Department, participated in the police investigation of Escorts Only. After Yvonne Hancock was arrested, she assisted him in the police investigation of Escorts Only, and her help led to the arrests of Louis Botta and Tom Harbour, who also agreed to work with the police. Ashworth fitted Harbour with a transmitter that allowed the police to record any conversation, and Harbour then went to the appellant's home in the Center Point section of Birmingham to deliver marked currency purportedly obtained from the prostitutes working for Escorts Only. The State played the audiotape of the conversation between Harbour, the appellant, and an unknown male to the jury during the appellant's trial, and the conversation indicated that the appellant was aware that several of Escort Only employees were engaging in prostitution.
Thereafter, Ashworth executed a search warrant for the appellant's home and recovered, among other things, the marked currency that Tom Harbour had delivered to the appellant, an invoice from the Birmingham News made out to "Cyndi's Place," business cards for Escorts Only, and detailed handwritten notes that contained instructions for avoiding an arrest for prostitution as well as what to do if arrested for that offense. This Court notes that these instructions are reflected in the testimony presented at the appellant's trial by employees of Escorts Only. Officer Jerry Wiley, who was also employed with the vice and narcotics division of the Birmingham Police Department and who participated in the search of the appellant's house, identified the appellant as the person at the appellant's residence when the search took place.
The State presented sufficient evidence to prove that the appellant profited from a prostitution business that involved two or more prostitutes. That is enough to establish a prima facie case of promoting prostitution in the second degree. See, § 13A-12-112, Code of Alabama 1975. The appellant's argument that the State did not prove her guilt because the women working for her escort service had some latitude in how they conducted their business or because she had signed "contracts" from each prostitute stating that they agreed to do nothing illegal while working for Escorts Only is contrary to the evidence and is without merit.
For the foregoing reasons, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All judges concur.
[1] United States v. Harbin, supra, uses the federal test to determine whether a prosecutor's comment impermissibly addresses a defendant's Fifth Amendment protected silence. That test is whether "it can be said that the prosecutor's manifest intention was to comment upon the accused's failure to testify [or] was . . . of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Id. at 777.